UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA ZVORYGINA,<br><br>                                Petitioners,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden of the Otay Mesa Detention Center, et al.,<br><br>                                Respondents. | Case No.: 26-CV-980 JLS (DEB)<br><br>**ORDER GRANTING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 4) |

      Presently before the Court is Petitioner Olga Zvorygina's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 4). Also before the Court is Respondents' Return to Habeas Petition ("Ret.," ECF No. 6) and Petitioner's Traverse ("Traverse," ECF No. 7). For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 4).

## BACKGROUND

      Petitioner is a native and citizen of Russia who entered the United States on April 10, 2022, and was briefly detained by the Department of Homeland Security. Pet. ¶ 1. Petitioner was released on parole valid through April 8, 2023. *Id.* Petitioner fled Russia to escape persecution by the Russian government on account of her political opinions. *Id.* ¶ 2. Since her release, Petitioner complied fully with all conditions of her parole, attended

all check-ins, applied for asylum, received work authorization, was issued a Florida driver's license and a U.S. Social Security Card, and has no criminal history. *Id.* ¶ 5. On December 30, 2025, Petitioner was stopped by a U.S. Border Patrol Agent "without probable cause" and was taken into immigration custody. *Id.* ¶ 4. Petitioner's parole was terminated without notice. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

**I.    Jurisdiction**

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g). Ret. at 3–4. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents claim that "Petitioner's claims necessarily arise from the Department of Homeland Security's decision to commence removal proceedings against him." Ret. at 4 (simplified). The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Pet. ¶¶ 24–31. Rather, Petitioner is challenging the legality of her parole revocation, alleged wrongful arrest, and continued detention. *Id.* Petitioner is enforcing her "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Navarro Sanchez v. Larose et al.*, 25-cv-2396 JES (MMP), 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (finding the Court had jurisdiction in a similar matter); *Noori v. Larose et al.*, 25-cv-1824 GPC (MSB), 2025 WL 2800149, at *7–8 (S.D. Cal. Oct. 1, 2025) (same).

## II.  Merits

Petitioner argues that the summary revocation of her parole without justification or consideration of her individualized circumstances violates the Due Process Clause. Pet. ¶¶ 24–31. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533

U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225 Petitioner is subject to mandatory detention and therefore her alleged statutory and constitutional violations fail. Ret. at 4. The Court disagrees. Petitioner has been granted humanitarian parole, granting her parole for a year.[1] Pet. ¶ 1. Petitioner is not a newly

---

[1] Respondents contend that because Petitioner's parole expired after a year, any due process arguments are foreclosed. Ret. at 4–6. The Court disagrees because Petitioner's liberty "interest did not expire along with Petitioner's parole agreement." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.* (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). Therefore, the expiration of Petitioner's parole does not impact the liberty interest in her release. *See, e.g.*, *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (finding the expiration of petitioner's parole did not extinguish his liberty interest); *Quiroga-Chaparro v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (same);

arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since April 2022. Pet. ¶ 1. Upon arrival, she was determined to not be a danger to the community or a flight risk, has attended his check-in appointments, applied for asylum, received work authorization, was issued a Florida driver's license and a U.S. Social Security Card, and has no criminal history. *Id.* ¶¶ 1–5. Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before she can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved

---

*Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-0421-GPC-MMP, 2026 WL 280478, at *3 (S.D. Cal. Feb. 3, 2026) (same).

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to her parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with and providing for her family and continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing her a reason for revocation or giving him an opportunity to be heard. Pet. ¶ 8. Since DHS's initial determination that Petitioner should be paroled because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has work authorization, and has filed an asylum application. Pet. ¶¶ 1–5. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of her parole. *See generally* Ret. "Where as here, 'the petitioner has not received any bond or custody

hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 4). The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of her preexisting parole. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of her parole and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger

to the community or a risk of flight.[2]  The Parties are **ORDERED** to file a Joint Status Report by March 16, 2026, confirming that Petitioner has been released.  The Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated:  March 10, 2026

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[2] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).